## Commonwealth ex rel. Pullman v. Pullman

*Edward M. Seletz*, for relatrix.

*Edward S. Lawhorne*, for respondent.

DIGGINS, J., July 27, 1961.—The picture presented to the trial judge by the record adduced originally showed that the parties were in the process of a divorce. They owned a property as tenants by the entireties which was clear. The father, the respondent, was living in the property. There are three minor children, Angela, then going on 19 years of age, 21 now; Mary Josephine, then 15, now 17, and Linda, then 11, now 13. Angela was attending Kutztown State Teachers College and divides her time, when not at school, between her father and mother. Mary Josephine, then in high school, now graduated and about to enter Penn State University this fall, lives with and is maintained by the father. Linda, about to enter the eighth grade, lives with the mother, visits the father every day after school, and eats six meals a week with him.

The father is employed as a sheet metal worker and at the time of the original order earned about $89 a week; the mother is a waitress and earns, with tips, a net take-home pay of approximately $55. The father now has a take-home pay of $107.17.

The record further shows that here are two adult parents with irreconcilable differences. However, both seem to have had a real desire that the children should suffer as little as possible as a result of the contemplated divorce. The father indicated not only a natural love and affection for the three girls but a real desire to see that they were properly educated to meet the challenges of life, and at that hearing voluntarily assumed not only the obligation of support, but the obli-

gation to provide college educations for the two older girls. This does not mean that he did not then and does not now intend to do the same for the third child, but, because of her age, the question of college for her was not emphasized at the first hearing, and she may prove not to be of college calibre.

The original philosophical purpose of the trial judge was to provide support for all three and college educations for the two older girls, relying on the possibility that the youngest girl would get the same treatment at the proper time if she desired the education. Then and now, the trial judge was working with limited earnings, and suggested that in order to enable the plan to work, the parties should agree that the home would be left intact after the divorce and that neither would seek its partition under the Act of May 10, 1927, P. L. 884, that the father would continue to live therein and accommodate the children as heretofore mentioned, and that he would maintain the property and pay all taxes, and the trial court suggested that an agreement in writing be made between the parties and their counsel to this effect, and that this same agreement should include the obligation upon the father to educate Angela and Mary Josephine, the agreement to terminate and the way be opened for partition when Mary Josephine, the second eldest, finished her education or dropped out of college.

Because at the original hearing, there was also the question of counsel fee and costs in the divorce case being considered, the court made the usual order of $125 for these purposes, which is of no moment here, and on February 20, 1959, made an order for the support of Linda, the youngest, in the amount of $7.50 a week. This, of course, contemplated that the oldest child, Angela, would be assisted by the father through college and to some extent supported, the second girl,

Mary Josephine, would be fully supported and assisted through college, and it was, of course, hoped that even though the property might be divided before the youngest, Linda, was ready for college, the same privilege would be afforded her by the father.

This was the situation the trial judge wanted to create, this was the situation the trial judge wanted to protect and the parties were in agreement, and a written paper was entered into embodying the court's suggested plan, and operated for some two years. In the interim, the divorce was completed.

Then it appeared that Angela, the eldest, had taken on some earning capacity and during vacations, etc., had saved some money and the father had required Angela to use this money as an assist in her tuition. The mother construed this as being an unjust advantage to the father and felt that since the expense for Angela was being lightened, the father should increase the support for the youngest child, Linda, and also pointed out that the father had had an increase in wages since the original hearing, and that Linda's maintenance expenses had increased. The mother further felt that the use of Angela's earnings for this purpose was an abridgement of the agreement.

There is, of course, some merit in the first part of the mother's contention regarding increased support for Linda, but the trial judge thought then, and thinks now, there is little merit in the second contention that the agreement is abridged and, therefore, the entire matter now be de novo before the court; and the trial judge is of the opinion that bitterness is creeping in on the part of the mother and, therefore, feels it his duty to prevent the same thing arising in retaliation on the part of the father, which might result in these girls not getting a college education; yet there, of course, remains the duty of the father to support the youngest child.

His wages have increased 22 percent since the original order, and the court felt that it must at least grant a commensurate increase in the order for Linda's support and consequenlty, on May 19, 1961, increased that order to $9.50 per week. The mother also contends that she supplies certain things for all three of the girls in the way of clothing and other items, but as we said in the original hearing, we repeat now, if these children are not to become the total victims of the disrupted home, both parents should make sacrifices. It is from the failure of the court to increase the order for Linda in a greater proportion that an appeal is taken.

It seems to us that legally the father has a right to Angela's earnings while she is a minor, and he is within his legal rights in requiring that these be used to assist in her education, although we do not rest our judgment on that theory. We rest on our theory of the overall plan which involves all three of these minor children and their future education, and we think that that plan should be maintained as long as it is in being and progressing as it is now.

The record does not show the overall detailed expense to which the father is put, but he does say that, unless he can get the advantage of Angela's financial assistance, he cannot build up the necessary backlog of money that will be needed for Mary Josephine, and since all three are recipients of the benefits of the plan, there is nothing wrong with this application of available moneys, even though the record shows that Mary Josephine has had some earnings which are also being accumulated under the control of the father as an assist with her education.

It was with this end in view, as well as with the knowledge that the matter might have to be reviewed periodically and perhaps changes made as time went on that we made the plan. To exceed the present ad-

dition to the order for Linda, as the matter stands now, thereby putting further pressure on the father, seems to us unwarranted and unwise, and might open the door for the collapse of the whole plan. Therefore, the only change made was to increase the order for Linda approximately 22 percent to $9.50.

We are not unmindful of the fact that we could readily accept relatrix's view of this matter, relax our vigilance regarding the education of these children, and enter a simple order for those dependent and thereby avoid this whole controversy. This, however, we decline to do.

The foregoing seems also to be in consonance with the theory of college education of children announced by the Superior Court in Commonwealth ex rel. Stomel v. Stomel, in an opinion for the court by Judge Ervin, 180 Pa. Superior Ct. 573, and Fusco Estate, 16 D. & C. 2d 129.